IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MICHAEL JIMENEZ, #873142 | § | |
| VS. | § | CIVIL ACTION NO. 9:12cv35 |
| CODY GINSEL, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL

Plaintiff Michael Jimenez, a prisoner confined at the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

### Facts of the Case

The original complaint was filed on February 28, 2012. The Plaintiff complained that he was a victim of excessive use of force. On April 10, 2012, the Court conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden Jeffrey Catoe, Dr. Gary Wright and Regional Grievance Director Laurie Parker. All of the witnesses testified under oath.

The Plaintiff testified that he was confined in administrative segregation at the Gib Lewis Unit on December 2, 2011. The cells in administrative segregation are searched on a daily basis. The Plaintiff was having a few problems, such as with food allergies, and officers just ignored his requests for help. Consequently, he resorted to refusing to comply with the daily routine of searching his cell

1

in an effort to speak to ranking officials and, hopefully, persuade them to resolve his problems. When he refused to come out of his cell for the search, a five man team was assembled. They used a chemical agent and forcibly removed him from the cell. Nurse Mattox examined him, asked him if he was injured, and he replied "no." The five man team then returned him to his cell. He was placed faced down on the floor. His leg restraints were removed. Officer Reynolds began removing his hand restraints, but then he yelled out that the Plaintiff had grabbed his hand. Officers Ard, Clark, Reynolds and Espino started striking him. Espino kneed him in the eye, which gave him a black eye. Officers Scroggins held his legs down in order to prevent him from moving. Lt. Sells stood outside of the cell and supervised the use of force against the Plaintiff. The Plaintiff stressed that he did not do anything to prompt the use of force. He asserted that he did not grab Officer Reynolds' hand. Instead, Officer Reynolds just yelled out that the Plaintiff had his hand as a signal to the others that it was time to start using force. His injuries included a cut eye brow, a swollen eye, swelling to the right side of his forehead, a swollen cheek, a bruised shoulder and an abrasion in the middle of his forehead.

The Plaintiff testified that he sued Officer Kami Gallatin, the camera operator, because she did not videotape everything that transpired. She should have recorded the fact that he had not grabbed Officer Reynolds' hand. She should have recorded the fact that he did not try to get up or struggle with the officers. He asserted that she did not properly record the incident.

The Plaintiff testified that he sued Wardens Ginsel and Brewer because they regularly walk the halls of the unit. He tried to talk to them, but they did not want to listen to his complaints. He was instructed to talk to their subordinates. The Plaintiff stressed that the use of force incident could have been avoided if they had just talked to him and had resolved his problems.

The Plaintiff gave the Court permission to review his prison records. The records documented the use of force incident. A use of force report specified that the people who participated in the use

2

of force incident were Clinton Ard, Joseph Clark, Valentin Espino, John Reynolds, John Scroggins and Edward Sells. The summary of the incident provided the following discussion:

> The offender refused to comply to a strip search and the application of hand restraints and chemical agents were utilized. When the team was placing the offender back in his cell the offender began to resist during the removal of restraints and grabbed one of the officers and the team utilized force and placed the restraints back on the offender in order to gain compliance and to get control of the situation.

An injury report by Nurse Mattox specified that the Plaintiff had injuries to his eyes and shoulders consisting of abrasions and cuts. The injuries were described as minor. Her assessment was that there was no need for treatment. The report concluded that the minimum amount of force necessary was used to restrain the Plaintiff.

## Discussion and Analysis

The Plaintiff alleged that he was subjected to excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

3

In the present case, force was applied against the Plaintiff. He has alleged facts that support a conclusion that force was unnecessarily applied. He should be permitted to proceed with his claims against those who used force against him. The information contained in the use of force report makes it appear that prison officials will likely argue that force was appropriately applied because the Plaintiff grabbed an officer. The Plaintiff's version of the facts differ from the facts contained in the use of force report, thus a trial will likely be necessary.

One final issue remains, which concerns who should be required to answer the Plaintiff's excessive use of force claims. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court recently held that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id.* A person may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987).

In the present case, the people who participated in the use of force incident were Clinton Ard, Joseph Clark, Valentin Espino, John Reynolds, John Scroggins and Edward Sells. Defendants Ginsel, Brewer and Gallatin did not participate in the incident. Gallatin did nothing more than record the

incident. Ginsel and Brewer were not there. They were sued because they are wardens and possibly could have taken steps that arguably would have prevented the incident from occurring. However, there was not a sufficient causal connection between their failure to resolve his problems and the use of force that was subsequently applied against him. The claims against Ginsel, Brewer and Gallatin fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Ginsel, Brewer and Gallatin should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Clinton Ard, Joseph Clark, Valentin Espino, John Reynolds, John Scroggins and Edward Sells. It is further

**ORDERED** that the claims against Cody Ginsel, Wayne Brewer and Kami Gallatin are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **29** day of **April, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE