IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MICHAEL JIMENEZ, #873142 | § | |
| VS. | § | CIVIL ACTION NO. 9:12cv35 |
| CODY GINSEL, ET AL. | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Michael Jimenez, a prisoner confined at the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The defendants remaining in the lawsuit are Clinton A. Ard, Valentin Espino, Edward B. Sells, John A. Scroggins, Joseph Clark and Jonathan Reynolds (collectively "the Defendants"). The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present memorandum opinion concerns the Defendants' motion for summary judgment (docket entry #45) and the Plaintiff's response (docket entry #50).

Plaintiff's Factual Claims

The original complaint was filed on February 28, 2012. The Plaintiff complained that he was a victim of excessive use of force. On April 10, 2012, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985). The Plaintiff testified that he was confined in administrative segregation at the Gib Lewis Unit on December 2, 2011. The cells in administrative segregation are searched on a daily basis. The Plaintiff stated that he was having a few problems, such as with food allergies, and officers just ignored his requests for help. Consequently,

1

he resorted to refusing to comply with the daily routine of searching his cell in an effort to speak to ranking officials and, hopefully, persuade them to resolve his problems. When he refused to come out of his cell for the search, a five man team was assembled. They used a chemical agent and forcibly removed him from the cell. Nurse Mattox examined him, asked him if he was injured, and he replied "no." The Defendants then returned him to his cell. He was placed faced down on the floor. His leg restraints were removed. Officer Reynolds began removing his hand restraints, but then he yelled out that the Plaintiff had grabbed his hand. Officers Ard, Clark, Reynolds and Espino started striking him. Espino kneed him in the eye, which gave him a black eye. Officers Scroggins held his legs down in order to prevent him from moving. Lt. Sells stood outside of the cell and supervised the use of force against the Plaintiff. The Plaintiff stressed that he did not do anything to prompt the use of force. He asserted that he did not grab Officer Reynolds' hand. Instead, Officer Reynolds just yelled out that the Plaintiff had his hand as a signal to the others that it was time to start using force. His injuries included a cut eye brow, a swollen eye, swelling to the right side of his forehead, a swollen cheek, a bruised shoulder and an abrasion in the middle of his forehead.

On April 30, 2012, the Court issued a memorandum opinion and partial order of dismissal (docket entry #17) permitting the Plaintiff to proceeding with his excessive use of force claim against Ard, Espino, Sells, Scroggins, Clark and Reynolds and dismissing everyone else.

## Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #45) on August 23, 2012. They argued they are entitled to summary judgment based on qualified immunity and Eleventh Amendment immunity. In support of their motion, they submitted a copy of the major use of force report, a video from the major use of force report, affidavits from Edward Sells and Clinton Ard, and relevant portions of the Plaintiff's classification records.

The Defendants provided their own version of the facts of the case. They asserted that the incident began when the Plaintiff refused to submit to hand restraints and a strip search during a routine cell search. They noted that his cell was searched daily because he was a high profile offender. He was classified as such because he had a history of attempting to escape and assaulting staff. Lt. Sells was notified that the Plaintiff refused to exit his cell. He attempted to resolve the situation by verbal intervention, but the Plaintiff persisted in refusing to submit to hand restraints and a strip search. Lt. Sells then assembled a five man extraction team. He also obtained authorization from Major Todd to use a chemical agent. He gave two verbal commands to the Plaintiff to comply with orders and submit to hand restraints. Lt. Sells warned him that if he continued to refuse to comply, then chemical agents would be used. The Plaintiff persisted in refusing to comply, thus Lt. Sells administered a single blast of the chemical agent. The Plaintiff was again ordered to submit to a strip search, the application of hand restraints and to exit the cell. He eventually complied with orders.

Officer Espino conducted a strip search and applied hand restraints. Nurse Mattox conducted a use of force physical. The Plaintiff told Nurse Mattox that he was not injured, and she did not observe any injuries. He was then escorted back to his cell.

The Plaintiff was instructed to get in a prone position on the floor so that his hand and ankle restraints could be removed. Officer Reynolds removed the restraints. The Defendants asserted that the Plaintiff then assaulted Officer Ard by grabbing his right hand. The Plaintiff pulled Officer Ard's right hand and arm under his body. He twisted and jerked Ard's arm. Officer Ard feared that the Plaintiff was going to break his arm. The Defendants asserted that the Plaintiff's actions forced them to engage in steps to regain control over the situation. The officers were able to free Ard's arm and place the Plaintiff back in a prone position. The Plaintiff continued to resist efforts to restrain him. The Defendants reapplied hand and ankle restraints. As the team assisted the Plaintiff to his knees,

he allegedly attempted to head butt Officer Espino. The Plaintiff struck Officer Espino's vest with his head. In order to regain control over the situation and to prevent further assault by the Plaintiff, Officer Ard placed the Plaintiff back into the prone position. The Plaintiff continued to struggle and resist the Defendants' attempts to restrain him. After the Plaintiff stopped resisting, Lt. Sells had him lifted to his feet and escorted out of the cell for a second use of force physical. Nurse Mattox noted an abrasion to the Plaintiff's back shoulder, left eyebrow and center forehead. She concluded that the injuries were minor and did not need further treatment. The Defendants argued that their actions were needed in response to Plaintiff's continued acts of misconduct and assaults. The details of their legal arguments will be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

Plaintiff's Response

The Plaintiff filed a response (docket entry #50) to the motion for summary judgment on September 11, 2012. He argued that there are genuine issues of material fact in dispute that require a trial. In support of his response, he attached his own affidavit, along with declarations from inmate Jerrick Crooks, Dustin Sullivan, and Jimmy Calderon. He also submitted nursing notes from the two uses of force, photos, the video from the major use of force report, and the TDCJ Use of Force Plan. The Plaintiff argued that he was subjected to excessive use of force and that the Defendants are not entitled to qualified immunity or Eleventh Amendment immunity.

The Plaintiff commented on several facts presented by the Defendants. He asserted that he is not suing the Defendants for spraying him with the chemical agent. His lawsuit concerns their actions after he was sprayed with the chemical agent. He asserted that after he was returned to his cell and placed on his stomach, Officer Reynolds began to remove the restraints. As he was removing the restraints, Officer Reynolds began to yell, "his hand," as a signal to the others officers to start beating

Plaintiff. It is noted that in his affidavit, the Plaintiff asserted that Officer Reynolds yelled, "my hand, my hand." The Plaintiff denied the claim that he grabbed Officer Ard's hand. He added that he did not grab anyone's hand. The Plaintiff asserted that the Defendants started hitting him. Lt. Sells kept telling him not to resist, although he was not resisting. His injuries included a swollen eye, a laceration on his eyebrow, a swollen forehead, abrasions on his cheeks and on the middle of his face, and bruises on his upper back.

The video of the incident is inconclusive. For the most part, the details of what transpired are unclear because the view of what was occurring was blocked by the bodies of the five man extraction team. Nonetheless, the team members are seen kneeling over the Plaintiff. One of the team members is seen removing the restraints. Someone screams, and the team drops down on top of the Plaintiff. Someone yells "hand" several times, and the Plaintiff responds that he does not have his hand.

The details of the Plaintiff's legal arguments will be discussed more fully in the Discussion and Analysis section of this Memorandum Opinion.

## Discussion and Analysis

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved

in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 Fed. Appx. 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 Fed. Appx. 330, 332 (5th Cir. 2011).

Courts must employ the summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The Plaintiff alleged that he was the victim of excessive use of force. He asserted that he is not suing the Defendants for spraying him with the chemical agent; instead, his lawsuit concerns their actions after he was sprayed with the chemical agent. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation marks and citations omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may

7

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). The Fifth Circuit has repeatedly held that these five factors must be analyzed in evaluating an excessive use of force claim. *See Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Brewer v. Prier*, 334 Fed. Appx. 618, 619 (5th Cir. 2009).

The first factor to consider is the extent of the injury suffered. The Defendants asserted that the Plaintiff's injuries consisting of a minor abrasion on his back shoulder, his left eyebrow and on the center of his forehead were *de minimis*. The Plaintiff asserted that his injuries consisted of a swollen eye, a laceration on his eyebrow, a swollen forehead, abrasions on his cheeks and on the middle of his face, and bruises on his upper back.

The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d at 924. There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

The Fifth Circuit has issued a number of decisions which provide guidance in determining whether an inmate's physical injuries were *de minimis*. In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries consisting of "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched and kicked and that required medical treatment were more than *de minimis*.

Accepting all reasonable inferences in favor of the Plaintiff, the non-moving party, the competent summary judgment evidence reveals that the Plaintiff's injuries were more akin to those described in *Gomez v. Chandler*, as opposed to those described in *Siglar v. Hightower*. His injuries were sufficient to satisfy the non-*de minimis* threshold, although they were somewhat minor.

The second factor to consider was the need for the application of force. The competent summary judgment evidence presented by both sides makes it abundantly clear that there are disputed issues of material fact with respect to this factor. The Defendants argued that there was a need for the application of force after the Plaintiff grabbed Officer Ard's right hand. The Plaintiff purportedly pulled Officer Ard's right hand and arm under his body and twisted it. The Plaintiff, on the other hand, asserted that he was on his stomach obeying Lt. Sells' orders. He vehemently denied the claim that he grabbed Officer Ard's hand. The video is inconclusive, but you can hear Plaintiff state he did not have anybody's hand. Hence, there are disputed issue of material fact as to whether the Plaintiff grabbed Officer Ard's hand and whether there was a need for the application of force.

The third factor is the relationship between the need and the amount of force used. The Plaintiff argued that there was no need to use any amount of force. The Defendants asserted that they

9

used the minimum amount of force necessary to control the Plaintiff in response to his misconduct. They argued that they did only what was absolutely necessary to protect themselves and to maintain security. Once again, there are disputed issues of material fact as to this issue.

The fourth factor is the threat reasonably perceived by the responsible officials. According to the Defendants' version of events, Officer Ard feared that his arm was going to be broken. Under their version of events, Officer Ard had reason to fear for his safety. The Plaintiff, however, denied that he grabbed Officer Ard's hand. He asserted that he was complying with Lt. Sells' orders and not creating any threat. Once again, the material facts are in dispute as to this issue.

The final issue focuses on efforts made to temper the severity of a forceful response. The material facts underlying the resolution of this factor are again in dispute.

Overall, there are disputed issues of material fact as to whether the Defendants subjected the Plaintiff to excessive use of force.

The Defendants' motion for summary judgment focused on the defenses of qualified immunity and Eleventh Amendment immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). Under the traditional approach, a court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id. See also Brown*

*v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted). In order to rebut a defendant's qualified immunity defense in the context of an excessive use of force claim, a plaintiff must establish that (1) the official's allegedly wrongful conduct was excessive force in violation of the Eighth Amendment and (2) genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Mosley v. White*, 464 Fed. Appx. 206, 211 (5th Cir. 2010).

As previously noted, there are disputed issues of material fact concerning whether the Defendants subjected the Plaintiff to excessive use of force. There likewise are genuine issues of material fact regarding the reasonableness of the Defendants' conduct. The Plaintiff asserted that Officer Reynolds yelled out "hand" without any basis to do so in order to give the Defendants an excuse to attack him. A determination of the reasonableness of their actions is contingent upon whether the Plaintiff grabbed Officer Ard's hand and arm thereby justifying a forceful response. If the trier of fact concludes that the Plaintiff was lying still on his stomach, obeying Lt. Sells' orders and that he did not grab Officer Ard's hand and arm, then the subsequent use of force was unreasonable. In any event, the material facts are in dispute and must be resolved by a jury.

The final issue raised by the Defendants is Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the

Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Defendants are entitled to Eleventh Amendment immunity to the extent that the Plaintiff sued them in their official capacities for damages. Nonetheless, he may still proceed against them for damages in their individual capacities. It is therefore

**ORDERED** that the Defendants' motion for summary judgment (docket entry #45) is **GRANTED**, in part, and **DENIED**, in part. It is further

**ORDERED** that the Defendants' motion for summary judgment is **GRANTED** to the extent that the Plaintiff sued the Defendants for damages for actions performed in their official capacities and **DENIED** in all other respects.

So **ORDERED** and **SIGNED** this **21** day of **September, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE